ZAIDA L. GONZÁLEZ ROMÁN, peticionaria, *v.* SUCESIÓN CRUZ CRUZ, recurrida.

*Número:* CC-2003-979 *Resuelto:* 10 de diciembre de 2004

*Iván Crespo Arroyo*, abogado de la parte peticionaria; *Hilton J. García Aguirre*, abogado de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Nos corresponde determinar los derechos y las obligaciones, si algunos, que surgen de un contrato de arrendamiento, en el que se incluye una cláusula que le concede al arrendatario el derecho de preferencia para adquirir el inmueble arrendado en la eventualidad de que el arrendador decida enajenarlo.

## I

Los hechos medulares no están en controversia. En mayo de 1999, el Sr. Antonio Cruz Cruz y las Sras. Generosa Cruz Cruz, Luz María Acevedo Cruz y Luz María González Cruz (Sucesión Cruz Cruz) le arrendaron a la Sra. Zaida Luz González Román un local comercial de su propiedad localizado en Aguadilla, Puerto Rico.[1] Mediante dicho contrato de arrendamiento, entre otras cosas, la Sucesión Cruz Cruz le concedió a la señora González

---

[1] Cabe destacar que la referida propiedad se encontraba en un terreno que le pertenecía a la Sucesión Cruz Cruz, en el que, además, enclavaba una residencia familiar. En el contrato de arrendamiento no se incluyó el resto de la propiedad o las estructuras.

Román el derecho de adquirir, con carácter preferente, el inmueble arrendado en la eventualidad de que la Sucesión decidiese enajenarlo. A tales efectos, se estableció en la cláusula (F) del contrato en cuestión lo siguiente:

F) *Si en el futuro los arrendadores decidieran vender la propiedad arrendada convienen éstos en dar la primera opción de compra a la arrendataria.* El precio de venta en dicha eventualidad será el que establezca un tasador escogido por ambas partes. Esta tasación se llevará a cabo en o antes de seis meses desde la fecha de este contrato y el costo será pagado por los arrendadores. (Énfasis suplido.) Apéndice, Anejo XIV, pág. 47.

Transcurridos aproximadamente cinco meses desde la fecha cuando la señora González Román comenzó a disfrutar de la referida propiedad en calidad de arrendataria, los miembros de la Sucesión Cruz Cruz decidieron vender la propiedad arrendada. A tales efectos, el señor Cruz Cruz, en representación de los miembros de la Sucesión Cruz Cruz, le solicitó a la señora González Román que comenzase las gestiones para la tasación de la propiedad. La propiedad fue tasada en $136,600 dólares.

Recibida la tasación, el señor Cruz Cruz le informó a la señora González Román que la Sucesión Cruz Cruz no estaba dispuesta a vender su propiedad al precio de tasación. Contrario a lo pactado, le informaron que el precio de venta sería el de $140,000 dólares. En ese momento, la señora González Román indicó que aceptaría pagar dicho precio si se le realizaban ciertos arreglos sustanciales a la propiedad. A solicitud del señor Cruz Cruz, la señora González Román preparó un contrato de opción de compra que recogía sus exigencias. Oportunamente, el señor Cruz Cruz le notificó a la señora González Román que los miembros de la Sucesión Cruz Cruz no aceptaban el contrato como estaba redactado.

Meses más tarde, a través de un contrato de promesa de compraventa, la Sucesión Cruz Cruz se comprometió a venderle todas sus propiedades, incluida aquella arren-

dada a la señora González Roman, al Sr. Héctor Hernández y a su esposa Enibet Nieves. No obstante, en dicho contrato se especificó que se honraría el contrato de arrendamiento de la señora González Román.

En desacuerdo con esta situación, la señora González Román presentó ante el Tribunal de Primera Instancia una demanda por incumplimiento de contrato y por daños y perjuicios contra la Sucesión Cruz Cruz. En síntesis, ella solicitó del tribunal que obligara a los demandados a venderle la propiedad conforme a los acuerdos suscritos en el contrato de arrendamiento. A dicha solicitud, la Sucesión Cruz Cruz se opuso. Luego de varios incidentes procesales, el Tribunal de Primera Instancia declaró "sin lugar" la demanda. Dicho foro sostuvo que el contrato suscrito por las partes no gozaba de las características de un contrato de opción, por lo que no podía obligar a la Sucesión Cruz Cruz a cumplir con éste.[2] Concluyó que las partes sólo pactaron el arrendamiento de la referida propiedad por un periodo de cinco años.

Inconforme, la señora González Román acudió mediante una solicitud de *certiorari* ante el antiguo Tribunal de Circuito de Apelaciones (Tribunal de Apelaciones). Dicho foro, aun cuando determinó que se había perfeccionado entre las partes un contrato de opción de compra, confirmó el dictamen emitido por el foro de instancia, por entender que las negociaciones entre las partes, con posterioridad al otorgamiento del referido contrato, extinguieron las obligaciones derivadas de éste.

Insatisfecha, la señora González Román acudió ante nos. En esencia, sostiene que el Tribunal de Apelaciones

---

[2] Se fundamentó en que, alegadamente, las conversaciones contractuales para otorgar el contrato se llevaron a cabo por un solo miembro de la Sucesión Cruz Cruz (el Sr. Antonio Cruz) sin contar con el consentimiento de los demás miembros.

Es menester señalar que, contrario a lo resuelto por el foro de instancia, del expediente que obra en nuestro poder se desprende que los miembros de la Sucesión Cruz Cruz estuvieron informados, en todo momento, de las gestiones realizadas por el Sr. Antonio Cruz Cruz. Tan es así, que todos comparecieron al otorgamiento del contrato en cuestión y con su firma validaron su contenido.

incidió al interpretar los derechos y las obligaciones que surgían del contrato de arrendamiento, en particular de su cláusula (F), y por ende, al determinar que las negociaciones que se produjeron entre las partes con posterioridad a otorgar el mencionado contrato extinguieron las obligaciones derivadas de éste. Acordamos expedir el auto de *certiorari* solicitado. Con el beneficio de las comparecencias de ambas partes, resolvemos.

## II

A. Contrario a lo afirmado por la señora González Román y por la propia Sucesión Cruz Cruz, y a lo resuelto por los tribunales inferiores, la cláusula (F) del contrato objeto de litigio no le otorga a la señora González Román un derecho de opción a compra sobre el local arrendado por ésta a la Sucesión Cruz Cruz. Nos explicamos.

Un análisis de la mencionada cláusula contractual no revela que se le haya concedido a la señora González Román, por tiempo fijo y en determinadas condiciones, la facultad, *exclusivamente a su arbitrio*, de decidir con respecto a la compra del local comercial que le arrendaron. *Mayagüez Hilton Corp. v. Betancourt*, 156 D.P.R. 234 (2002); *S.L.G. Irizarry v. S.L.G. García*, 155 D.P.R. 713 (2001); *Atocha Thom McAn, Inc. v. Registrador*, 123 D.P.R. 571, 583–584 (1989); *Rosa Valentín v. Vázquez Lozada*, 103 D.P.R. 796, 806 (1975); *Del Toro v. Blasini*, 96 D.P.R. 676, 681 (1968). *El derecho a optar para comprar la propiedad dependía de que el concedente del derecho, en este caso la Sucesión Cruz Cruz, decidiese enajenar el referido inmueble.* Así claramente se desprende de la cláusula (F) del contrato en cuestión cuando establece que "[s]i en el futuro *los arrendadores [la Sucesión Cruz Cruz] decidieran vender* la propiedad arrendada convienen éstos en dar la primera opción de compra a la arrendataria [la señora González Román]". (Énfasis suplido.) Apéndice, Anejo XIV,

pág. 47. Por no estar en manos de la señora González Román la facultad para decidir si se realizaba o no el negocio, no podemos concluir que estamos ante un contrato de opción de compra. Estamos más bien ante un *derecho de tanteo* instituido en un contrato de arrendamiento. Veamos.

■ B. *El tanteo es el derecho de preferencia que una persona tiene para la adquisición de una cosa determinada en caso de que su dueño quiera enajenarla, y por consiguiente, la facultad que le asiste para que, en este último caso, se lo manifieste así al propietario, indicándole el precio y las condiciones de la enajenación, si no se han pactado previamente.* Véanse: R. Badenes Gasset, *La preferencia adquisitiva en el Derecho español (tanteo, retracto, opción)*, Barcelona, Ed. Bosch, 1958, pág. 7; J. Santos Briz, *Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1973, T. II, págs. 700–702; J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1983, T. III, Vol. III, págs. 394–397; M. Coca Payeras, *Tanteo y retracto, función social de la propiedad y competencia autonómica*, Bolonia, Ed. Pubs. Real Colegio de España, 1988, pág. 34. Se trata de una obligación unilateral personal, mediante la cual el dueño de la cosa está obligado a notificar al titular del tanteo acerca de la enajenación proyectada. De esta manera, se faculta al titular del derecho para decidir si adquiriere o no una cosa con preferencia a los demás interesados, si algunos, en adquirirla. M. Albaladejo, *Curso de Derecho Civil español común y foral*, Barcelona, Ed. Bosch, 1982, T. III, pág. 483.

■ Como se puede apreciar, por su naturaleza, el derecho de tanteo opera previo a la enajenación y faculta a su titular a adquirir una cosa que va a ser enajenada por su propietario, con preferencia a cualquier otro, por el mismo precio que éste abonaría; es decir, por el tanto ofrecido a un tercero. Coca Payeras, *op. cit. A diferencia del derecho de opción, donde la iniciativa de aceptar es del optante, en el derecho a tanteo el titular mismo no tiene la iniciativa, sino*

*que ha de esperar que la haya tomado la otra parte; entiéndase, que el concedente del derecho haya decidido enajenar.* Puig Brutau, *op. cit.*, págs. 497–498.

 Según el Prof. José Ramón Vélez Torres, en su obra *Curso de Derecho Civil*, San Juan, Ed. U.I.A.P.R., 1997, T. II, pág. 463, el tanteo puede ser convencional o legal. En cuanto al primero de los casos (convencional), el cual nos ocupa, señala que:

> [E]l Código guarda silencio, pero la doctrina se pronuncia a favor de la posibilidad de crearlo a base de lo que dispone el artículo 1207, 31 LPRA 3372, al efecto de que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Así, podrá imponerse, voluntariamente, un gravamen sobre una cosa, en virtud del cual, al pretender enajenarla su dueño, tendrá preferencia para la adquisición la persona a la que se le concedió el derecho que constituye el gravamen. Íd.

 El tanteo, al igual que los otros derechos de adquisición preferente —como lo serían el retracto y la opción— se consideran derechos personales que sólo engendra vínculos obligacionales entre las partes contratantes; es decir, nacen y se desarrollan fuera del Registro de la Propiedad. Empero, cuando éstos se inscriben, porque así las partes lo han pactado expresamente, adquieren categoría de derechos reales, y desde entonces afectan a terceros. *Ortiz v. Registrador*, 82 D.P.R. 501 (1961). Véase, además, L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 1ra ed., San Juan, Jurídica Eds., 2000, págs. 401–404.

Vista la normativa aplicable, veamos los hechos del caso de autos.

## III

Como mencionamos anteriormente, en el caso ante nos se le concedió a la señora González Román el derecho pre-

ferente de adquirir el inmueble que le había arrendado los miembros de la Sucesión Cruz Cruz *en la eventualidad de que éstos decidieran enajenarlo*. Es decir, el surgimiento de la obligación dependía exclusivamente de la voluntad del concedente del derecho. Dicha condición fue cumplida alrededor de cinco meses después de que la señora González Román comenzará a disfrutar del inmueble, cuando el señor Cruz Cruz le manifestó su interés en vender la propiedad. Desde ese momento, su derecho de tanteo era totalmente exigible conforme a derecho.

## IV

Adjudicado lo anterior, resta por examinar si la Sucesión Cruz Cruz cumplió con su obligación, según se estipuló en el contrato. Veamos.

Según se desprende del expediente que obra en nuestro poder, una vez la Sucesión Cruz Cruz manifiesta su intención de vender la propiedad, la señora González Román debía tasar la propiedad. El precio de tasación constituiría *por voluntad de las partes* el precio de venta.[3] Realizado dicho procedimiento,[4] se estimó que la propiedad tenía un valor en el mercado de $136,600. Contrario a lo pactado, el señor Cruz Cruz, en representación de la Sucesión Cruz Cruz, le indicó a la señora González Román que no estaba de acuerdo en venderla por ese precio, pero sí en $140,000. A todas luces, la Sucesión Cruz Cruz incumplió con lo pactado.

En el ámbito de las obligaciones y los contratos, es una doctrina fundamental que cuando los términos de un

---

[3] En lo pertinente, la cláusula (F) del contrato objeto de litigio establecía:

"F) Si en el futuro los arrendadores decidieran vender la propiedad arrendada convienen estos en dar la primera opción de compra a la arrendataria. *El precio de venta en dicha eventualidad será el que establezca un tasador escogido por ambas partes* ...." (Énfasis suplido.) Apéndice, Anejo XIV, pág. 47.

[4] Es preciso señalar que la tasación se efectuó tal y como lo exigía el contrato, entiéndase dentro del termino de seis meses de celebrado.

contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *Residentes Parkville v. Díaz*, 159 D.P.R. 374 (2003); *Trinidad v. Chade*, 153 D.P.R. 280 (2001). Sabido es, también, que a partir del perfeccionamiento de un contrato, las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste, ello conforme a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 L.P.R.A. sec. 3375. *Trinidad v. Chade*, supra. En virtud de esta normativa, la obligación de la Sucesión Cruz Cruz, según se desprende claramente de la cláusula (F) del referido contrato, era vender la propiedad al precio de tasación. No lo hicieron.

Ahora bien, la Sucesión Cruz Cruz entiende que las negociaciones llevadas a cabo por las partes con posterioridad al otorgamiento del referido contrato —en las que la señora González Román aceptaba el precio si se le hacían ciertos arreglos y mejoras sustanciales a la propiedad— extinguieron las obligaciones derivadas de la cláusula (F), por lo que no está obligada a cumplir con la cláusula que le otorga el derecho de tanteo a la señora González Román. No le asiste la razón. No estamos ante un caso en que ambas partes —la señora González Román y la Sucesión Cruz Cruz— hayan expresado inequívocamente su deseo de que dicha obligación quede extinta o hayan pactado una nueva obligación que resultase de todo punto incompatible con la original.

■ *Las conversaciones habidas entre la señora González Román y la Sucesión Cruz Cruz no novaron la obligación de vender la propiedad al precio de tasación, pues para que esto suceda es requisito indispensable la voluntad manifiesta de todas las partes para extinguir la obligación y sustituirla por una nueva. United v. Villa*, 161 D.P.R. 609 (2004); *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 389 (1973); *Caribe Lumber Corp. v. Marrero*, 78

D.P.R. 868, 875–876 (1955). Ello es así, pues la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda. *Warner Lambert Co. v. Tribunal Superior*, supra. La novación en su modalidad extintiva es siempre una cuestión de intención y ésta debe inferirse de las circunstancias que rodean cada caso en particular. La doctrina puntualiza el elemento de la voluntad de las partes como determinante de la novación.

La Sucesión Cruz Cruz nunca aceptó realizar los cambios que le propuso la señora González Román. Por lo tanto, al no concurrir la voluntad de ambas partes para extinguir la obligación original, no cabe hablar de una novación extintiva que releve a la Sucesión Cruz Cruz de responderle por lo pactado a la señora González Román.

Al no haber operado la novación, la Sucesión Cruz Cruz estaba obligada a cumplir con lo pactado en el contrato de arrendamiento. Como no lo han hecho, conforme dispone el Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052, la señora González Román puede escoger entre exigir el cumplimiento o la resolución de la obligación, más el resarcimiento de daños —de probarse en su día que los sufrió— y el abono de interés en ambos casos.

## V

Por los fundamentos expuestos en la opinión que antecede, *se revoca el dictamen emitido por el Tribunal de Apelaciones. Se devuelve el caso al foro de instancia para la continuación de los procedimientos de manera compatible con lo aquí resuelto.*

El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita. El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita.