Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES

| | | |
|---|---|---|
| PEDRO HERNÁNDEZ GUILBE<br><br>Apelante<br><br>v.<br><br>OFG BANCORP H/N/C ORIENTAL BANK; DEMANDADO "X", DEMANDADO "Y", ASEGURADORA A, FULANO DE TAL<br><br>Apelados | KLAN202200816 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso número: PO2018CV01182<br><br>Sobre: Dolo, Sentencia Declaratoria |

Panel especial integrado por su presidenta, la jueza Romero García, el juez Rodríguez Casillas[1] y la jueza Aldebol Mora[2].

Aldebol Mora, Jueza Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 24 de enero de 2024.

Comparece la parte apelante, Pedro Hernández Guilbe, y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 15 de agosto de 2022. Mediante dicho dictamen, el foro primario declaró Ha Lugar la *Moción de Sentencia Sumaria Enmendada* presentada por la parte apelada, OFG BANCORP h/n/c Oriental Bank.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

## I

El 27 de septiembre de 2018, Pedro Hernández Guilbe (Hernández Guilbe o apelante) incoó una *Demanda* sobre sentencia declaratoria, así como daños y perjuicios, en contra de OFG BANCORP h/n/c Oriental Bank o apelado. Alegó que otorgó un contrato de arrendamiento financiero con

---

[1] Mediante Orden Administrativa OATA-2023-040 de 1 de marzo de 2023, el Hon. Roberto Rodríguez Casillas sustituyó a la Hon. Gina Méndez Miró.
[2] Mediante Orden Administrativa OATA-2023-001 de 9 de enero de 2023, la Hon. Waleska Aldebol Mora sustituyó al Hon. Abelardo Bermúdez Torres.

Oriental Bank por medio del cual le fue arrendado un vehículo de motor marca Lexus ISF del año 2011.[3]

Durante los años 2015 al 2016, Hernández Guilbe comenzó a incumplir con sus obligaciones y sostuvo comunicaciones con el banco para intentar remediar sus incumplimientos. Sin embargo, argumentó que Oriental Bank le había solicitado el pago total de lo adeudado. Sobre ese particular, Hernández Guilbe alegó que Oriental Bank no le proveyó remedios ante su incumplimiento con las obligaciones pactadas entre ambos y lo indujo a continuar pagando una deuda que, según adujo, no tenía obligación de pagar. Además, planteó que Oriental Bank catalogó como pérdida su acreencia, lo cual le ocasionó daños. En virtud de ello, solicitó varios remedios al foro primario.

Por su parte, el 27 de marzo de 2019, Oriental Bank presentó la correspondiente *Contestación a la Demanda*, en la cual negó tener alguna responsabilidad en cuanto a lo reclamado por Hernández Guilbe en la acción de epígrafe. En esencia, adujo que todo daño sufrido por Hernández Guilbe se debía únicamente a los propios actos de incumplimiento de este.

Junto con su alegación responsiva, la institución financiera sometió una *Reconvención*.[4] Indicó que Hernández Guilbe se había obligado a realizar unos pagos mensuales por la suma de $1,414.29, así como a pagar el residual correspondiente a la fecha del vencimiento del contrato. Arguyó que, en el año 2015, Hernández Guilbe subsanó el incumplimiento de varios meses, se estableció una fecha de reinicio de pagos y se extendió el vencimiento del contrato hasta el 22 de marzo de 2016. Planteó que Hernández Guilbe incumplió con el contrato de arrendamiento y no pagó el residual adeudado a la fecha del vencimiento del contrato. Por tanto, solicitó el pago de lo adeudado por Hernández Guilbe y una orden de reposesión del vehículo en cuestión.

---

[3] Apéndice del recurso, págs. 1-11.
[4] Íd., págs. 33-44.

El 26 de abril de 2021, Oriental Bank presentó una *Moción de Sentencia Sumaria.*[5] Dicha moción fue enmendada posteriormente, el 30 de noviembre de 2021.[6] En la misma, Oriental Bank sostuvo que existía una deuda líquida, vencida y exigible a su favor por parte de Hernández Guilbe, debido a los incumplimientos contractuales de este. Reiteró lo alegado en su reconvención y solicitó que esta se declarara Ha Lugar. Por otro lado, planteó que, contrario a lo propuesto por Hernández Guilbe, no tenía obligación contractual alguna de proveerle un refinanciamiento a este para el pago del residual adeudado. Argumentó que los remedios solicitados por Hernández Guilbe en su demanda carecían de fundamento alguno, por lo que este no contaba con una reclamación que justificara la concesión de un remedio. En vista de ello, solicitó que se declarara No Ha Lugar la acción de epígrafe.

Luego de varias incidencias procesales, el 3 de mayo de 2022, Hernández Guilbe se opuso.[7] En síntesis, indicó que, de la solicitud de sentencia sumaria surgía claramente que se había originado un arrendamiento financiero (*lease)* con todos los documentos pertinentes. No

---

[5] Entrada Núm. 52 del Caso Núm. P02018CV01182 en el Sistema Unificado de Manejo de Administración de Casos (SUMAC).

[6] Apéndice del recurso, págs. 151-198. Junto a su moción, la parte apelada presentó los siguientes documentos: (1) Copia del contrato de arrendamiento del vehículo en cuestión; (2) Documento mediante el cual se extendió el vencimiento del contrato de arrendamiento hasta el 22 de marzo de 2016; (3) Comunicación mediante correo electrónico en la que Hernández Guilbe expresó que su habilidad para realizar los pagos bajo el Contrato de Arrendamiento dependía del pago de honorarios por parte de uno de sus clientes; (4) Comunicaciones entre la Lcda. Gierbolini y Hernández Guilbe en las que se le recordaba hacer el pago correspondiente para evitar mayores retrasos y para notificarle el vencimiento de su préstamo; (5) Facturas reflejando falta de pago de Hernández Guilbe; (6) Declaración Jurada de la Lcda. Gierbolini en la que expresó su labor dirigida a intentar remediar el incumplimiento de Hernández Guilbe y estableció que, en ningún momento, ella de garantizó o aseguró a Hernández Guilbe un refinanciamiento; (7) Solicitud de financiamiento de vehículos de motor; (8) Declaración Jurada de Rigoberto Hernández en la que expuso el incumplimiento de Hernández Guilbe.

[7] Íd., págs. 211-275. La parte apelante acompañó su oposición con los siguientes documentos: (1) Declaración Jurada suscrita por Hernández Guilbe el 2 de mayo de 2022; (2) Contestación a Requerimiento de Admisiones, cursada a Oriental Bank; (3) Contestación a Primer Pliego de Interrogatorio, cursada a Oriental Bank. Posteriormente, el 23 de mayo de 2022, Hernandez Guilbe presentó una *Moción Suplementaria Parte Demandante a Oposición a Moción de Sentencia Sumaria.* Junto a su moción, la parte apelante presentó los siguientes documentos: (1) Carta suscrita por Hernández Guilbe, con fecha del 30 de junio de 2015; (2) Acuse de recibo, con fecha del 3 de julio de 2015; (3) Documento de modificación de términos por novación del 30 de junio de 2015, suscrito por Hernández Guilbe, y sobre diferimiento; (4) Leasing Cupón Sustituto y recibo por la cantidad de $721.00; (5) Correo electrónico del 28 de diciembre de 2015, remitido de Hernández Guilbe a la Lcda. Marisol Gierbolini; (6) Correo electrónico del 11 de enero de 2016, remitido de Hernández Guilbe a la Lcda. Marisol Gierbolini; (7) Pagos efectuados durante el año 2016; (8) Comunicaciones por mensaje de texto con la Lcda. Gierbolini, desde el 28 de diciembre de 2015 hasta el 31 de agosto de 2016; (9) Acuse de recibo de Carta, con fecha del 23 de enero de 2018, suscrita por Hernández Guilbe. Véase, Apéndice del recurso, págs. 288-331.

obstante, sostuvo que hubo una novación extintiva de dicho arrendamiento que implicaba un elemento de credibilidad que impedía la resolución sumaria del caso. Por otro lado, arguyó que restaba por resolver los daños que alegó haber sufrido a causa de la clasificación de pérdida (*charge off*) que hizo Oriental Bank al arrendamiento financiero en controversia. Argumentó que la institución financiera había incumplido con sus obligaciones y había promovido, a través de sus funcionarios autorizados, una novación extintiva, por lo cual no le asistía la razón a este. Por tanto, solicitó que se declarara No Ha Lugar la moción de sentencia sumaria promovida por Oriental Bank.

Evaluadas las posturas de las partes, el 15 de agosto de 2022, el Tribunal de Primera Instancia emitió la *Sentencia*[8] que nos ocupa y desglosó las siguientes determinaciones de hecho:

1. El 22 de diciembre de 2010 el Sr. Pedro Hernández Guilbe suscribió un Contrato de Arrendamiento de Vehículo (en adelante denominado "Contrato de Arrendamiento") ante Oriental, donde le fue arrendado el vehículo de motor marca Lexus ISF del año 2011, tablilla número HUN-972 y número de serie (número "VIN") JTHBP5C22B5008717, color blanco, (en adelante, el "Vehículo"). El referido Contrato de Arrendamiento es identificado por Oriental con el número 50139.

2. En el Contrato de Arrendamiento suscrito con Oriental, el Sr. Pedro Hernández Guilbe se obligó a realizar 60 pagos mensuales por la suma de $1,414.20, y pagar un residual a la fecha de su vencimiento el 22 de diciembre de 2015.

3. La sección 3(a) del Contrato de Arrendamiento dispone lo siguiente:

   En cuanto a todas las Unidades, el canon de arrendamiento, según indicado en el Anejo correspondiente, será pagadero por el Arrendatario al Arrendador sin necesidad de notificación adicional o requerimiento y no estará sujeto a rebaja, reducción, disminución, reconvención o compensación. El término del Arrendamiento se iniciará en la Fecha de Comienzo y los cánones de arrendamiento vencerán y serán pagaderos por el Arrendatario, a menos que se disponga de otra forma, en el mismo día de cada mes subsiguiente según se disponga en el Anejo que Contiene las Divulgaciones.

4. El Contrato de Arrendamiento, en su inciso veintisiete (27), dispone que "[e]ste Arrendamiento **no podrá ser alterado, excepto por escrito.** El Arrendatario reconoce que no existen representaciones o garantías por parte del Arrendador que no estén aquí contenidas". (énfasis nuestro).

5. Para los meses de abril, mayo, y junio de 2015, el Sr. Pedro Hernández Guilbe no realizó los pagos mensuales según acordado en el Contrato de Arrendamiento. Sin embargo, cónsono con lo establecido en el inciso veintisiete (27) del

---

[8] Apéndice del recurso, págs. 75-95.

Contrato de Arrendamiento descrito en el acápite anterior, el 13 de julio de 2015 el Sr. Pedro Hernández Guilbe suscribió un documento mediante el cual acordó pagar la suma de $722.42 por concepto de los intereses adeudados para los meses de abril, mayo y junio de 2015. Además, el demandante se comprometió a continuar efectuando los pagos mensuales por la suma de $1,414.29 a partir del 22 de julio de 2015, y se extendió el vencimiento del Contrato de Arrendamiento por tres (3) meses, hasta el 22 de marzo de 2016.

6. El 28 de diciembre de 2015 el demandante cursó a la Lcda. Marisol Gierbolini, de Oriental, una comunicación en la que le expresó que su habilidad para realizar los pagos bajo el Contrato de Arrendamiento dependía del pago de honorarios por parte de uno de sus clientes.

7. Según surge del historial de pagos, el Sr. Pedro Hernández Guilbe no realizó el pago que venció en el mes de julio de 2015 y lo realizó tardíamente el 13 de noviembre de 2015. El pago que venció en el mes de agosto de 2015 lo realizó en enero de 2016. El pago que venció en el mes de septiembre de 2015 lo realizó el 5 de febrero de 2016. El pago que venció en el mes de octubre de 2015 lo realizó el 14 de abril de 2016. El pago que venció en el mes de noviembre de 2015 lo realizó el 27 de mayo de 2016. El pago que venció en el mes de diciembre de 2015 lo realizó el 29 de junio de 2016. El pago que venció en el mes de enero de 2016 lo realizó el 1 de agosto de 2016. El pago que venció en el mes de febrero de 2016 lo realizó el 31 de agosto de 2016.

8. El Contrato de Arrendamiento venció el 22 de marzo de 2016. En su inciso 9, este establece lo siguiente:

Opciones del Arrendatario al Vencimiento del Arrendamiento

A. Vencido el Término de Arrendamiento, el Arrendatario tendrá las siguientes opciones:

(1) Adquirir la Titularidad de la Unidad pagando el Valor Residual junto a cualquiera otra suma adeudada establecida en el Arrendamiento.

(2) Entregar la Unidad al Arrendador, sujeto a lo dispuesto en la Sección 10 de este Contrato.

(3) El Arrendatario, en acuerdo con el Arrendador, podrá rearrendar la Unidad en un arrendamiento en el que el monto de los cánones no sea menos que el valor Residual. Durante el término original, el Arrendador podrá negarse a rearrendar la Unidad al Arrendatario. Se entenderá renovado el Arrendamiento, bajo los términos y condiciones dispuestos en el contrato original entre Arrendador y el Arrendatario, si el Arrendatario continúa en posesión de la Unidad con el consentimiento del Arrendador. Este nuevo contrato tendrá vigencia hasta tanto sea cubierto el Valor Residual, más las Cargas Financieras correspondientes.

9. Desde al menos diciembre de 2015, Oriental, por conducto de la Lcda. Marisol Gierbolini, mantuvo comunicaciones con el demandante para recordarle realizar los pagos a la mayor brevedad, para evitar mayores atrasos, y para notificarle el vencimiento del préstamo.

10. Oriental concedió múltiples oportunidades al demandante para subsanar su incumplimiento. No obstante, no lo hizo y sus incumplimientos permanecieron.

11. El 26 de julio de 2016, el demandante-reconvenido envió un mensaje de texto a la licenciada Gierbolini en el que expresó lo siguiente:

   "Este pago que me mencionas para este mes es el último relacionado con la libreta de pagos que vencía en Noviembre del 2015. No obstante, se me va a hacer difícil realizártelo ahora por otros compromisos que tengo programados para la toma de seminarios de Educación Continua pa[r]a mantener la Licencia de PR y NY, además de habilitar un presupuesto para facilitar otros planes de pago que voy a negociar con otros acreedores. Tengo honorarios pendiente de aprobación ante el Dept. del Trabajo y luego para cobro aproximadamente para la semana del 15 al 19 de agosto de 2016".

12. El mismo 26 de julio de 2016 la Lcda. Gierbolini respondió al mensaje de texto enviado por el demandante expresando lo siguiente:

   Licenciado: su préstamo requiere un pago este mes. Tiene 6 meses de atraso y sino [sic] recibe [sic] pago este mes no podría ni tan siquiera solicitar refinanciar residual. No tengo ninguna opción que no sea que se haga un pago este mes o sea 26 de julio de 2016.

13. Ante el mensaje por parte de la Lcda. Gierbolini previamente descrito, el demandante contestó que "aquí ya no es pertinente ese aspecto del atraso, (que lógicamente surgió por la situación económica que por medio de carta en el 2015 previamente expliqué)." Además, intentó atar sus requerimientos a una libreta de pagos y no así a la totalidad de lo adeudado.

14. La licenciada Gierb[o]lilini respondió afirmando que "su prest[amo] venció en marzo 2016 y estaría cubriendo enero 2016. Luego este pago de julio debe pasar lo más pronto posible por servicio al cliente para q[ue] se oriente de balance adeudado y poder iniciar solicitud de refinanciamiento".

15. Por su parte, el 23 de agosto de 2016 la Lcda. Gierbolini le comunicó al demandante que "[a]l 18 ago cta *[sic]* adeuda $38,966.17 recuerda esto no es un balance de cancelación por eso e[s] impt *[sic]* visitar servicio al cliente de inmediato."

16. Para el 31 de agosto de 2016, las comunicaciones entre las partes reflejan que el demandante intentó acreditar un pago alegádamente realizado por adelantado de $700.00, lo anterior a pesar de que para el 23 de agosto de 2016 la deuda ascendía a $38,966.17. Ante tales reclamos del demandante, la Lcda. Gierbolini fue clara al establecer que "[l]o que estoy haciendo es tratando de evitar perdida de la cta *[sic]* para dejar abierta una posibilidad de un refinanciamiento."

17. A pesar de que el demandante llevaba incumpliendo con sus obligaciones bajo el Contrato de Arrendamiento desde 2015 al no pagar las mensualidades y luego no pagó el residual vencedero en marzo de 2016, este firmó una solicitud de refinanciamiento el 27 de septiembre de 2016, esto es, seis (6) meses luego de haber vencido el término para pagar dicho residual.

18. El Sr. Hernández Guilbe, en múltiples ocasiones, aceptó que no tenía los fondos para pagar sus obligaciones objeto del Contrato de Arrendamiento.

19. El Sr. Pedro Hernández Guilbe no pagó el residual adeudado conforme a los términos y condiciones del Contrato de Arrendamiento.

20. El Sr. Pedro Hernández Guilbe incurrió en el incumplimiento de su obligación en relación con el Contrato de Arrendamiento

identificado con el número 50139, por lo que Oriental declaró vencida la totalidad de la deuda. Hasta el 19 de marzo de 2019, la deuda asciende a la suma de $35,093.45 por concepto del principal adeudado, $6,300.74 de intereses adeudados que continúan acumulándose a razón de $6.77 diarios, $492.84 cargos por atrasos y $150.00 de cargos por traspaso, para un total de $42,037.03.

21. El Sr. Pedro Hernández Guilbe adeuda a Oriental la suma antes expresada, habiéndose requerido su pago, sin resultado alguno a pesar de las diligencias y gestiones de cobro realizadas.

El foro primario concluyó que Hernández Guilbe había incumplido con sus obligaciones de pago por concepto del contrato de arrendamiento suscrito y que las obligaciones bajo este contrato en ningún momento fueron extinguidas. Determinó que, de la prueba documental surgía que, Oriental Bank, en todo momento, reafirmó el vencimiento del contrato acordado entre las partes para el 22 de marzo de 2022. Asimismo, expresó que la institución bancaria siempre fue clara en que, a partir de dicha fecha, Hernández Guilbe se encontraba en incumplimiento. Resolvió que nunca existió la voluntad de Oriental Bank de alterar la mencionada obligación mediante novación. Señaló que Hernández Guilbe no había presentado evidencia o fundamento alguno que demostrara que Oriental Bank tenía la obligación de refinanciar el residual adeudado. Añadió que la clasificación de pérdida reclamada por Hernández Guilbe fue parte de un protocolo interno del banco que en nada afectaba las obligaciones del deudor para con este. Por tanto, concluyó que cualquier daño sufrido por Hernández Guilbe se debió única y exclusivamente al incumplimiento con sus obligaciones contractuales con Oriental Bank.

En virtud de lo anterior, el foro *a quo* declaró Ha Lugar la solicitud de sentencia sumaria promovida por Oriental Bank y condenó a Hernández Guilbe al pago de $42,037.03 por la deuda en cuestión estar líquida, vencida y exigible.

En desacuerdo, el 30 de agosto de 2022, Hernández Guilbe presentó una *Moción en Solicitud de Reconsideración.*[9] La misma fue

---

[9] Apéndice del recurso, págs. 97-120.

declarada No Ha Lugar por el foro sentenciador el 31 de agosto de 2022, notificada al día siguiente.[10]

Inconforme, el 11 de octubre de 2022, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente error:

> Erró el TPI de Ponce al declarar: (A) Ha Lugar la Solicitud de Sentencia Sumaria: (I) al validar erróneamente las posturas de las partes apeladas protegiéndoles de manera absurda y excluyéndoles de la imposición de responsabilidad civil por virtud de dolo, de negligencia inexcusable, de la aplicación de las figuras del derecho civil sobre novación, condonación y por violación del debido proceso de ley: (II) por que *[sic]* resuelve con abuso de discreción y parcialidad no aplicar lo dispuesto en la[s] normas sobre novación, así como lo prescrito en las disposiciones del derecho mercantil y lo expuesto en el Código de Rentas Internas federal respecto al concepto ["]charge-off" y su homóloga en el derecho civil la condonación a dichas partes apeladas; (b) con total abuso de discreción y prejuicio, lo cual provoca que no se le garantice una solución justa de los procedimientos al apelante que le desestimaron su reclamo e incurriendo el TPI de Ponce en parcialidad manifiesta, y tambi[é]n con un total discrimen hac[i]a el apelante declaró No Ha Lugar la Moción de Reconsideración de la parte apelante Pedro Hernández Guilbe.

El 7 de diciembre de 2022, la parte apelada compareció ante nos mediante *Alegato en Oposición.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, resuelto el 29 de septiembre de 2023; *Oriental Bank v. Caballero García*, 2023 TSPR 103, resuelto el 23 de agosto de 2023; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 2023 TSPR 95, resuelto el 24 de julio de 2023; *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *Universal Ins. et als. v. ELA et al.*, 2023 TSPR 24, 211 DPR

---

[10] Íd., pág. 96.

___ (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 8; *Pérez Vargas v. Office*

*Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos

prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. et als. v. ELA et al.*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al.*

*v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Serrano Picón v. Multinational Life Insurance Company*, supra; *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Municipio Autónomo de San Juan y otros*, supra.

**B**

Como norma general, las obligaciones no solo nacen de la ley, sino también de los contratos y cuasicontratos, así como de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. 31 LPRA sec. 2992.[11] El Artículo 1206 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3371, sobre la existencia del contrato, dispone que: "[e]l contrato existe desde que una o varias personas consienten en obligarse… a dar alguna cosa, o prestar algún servicio". Es de conocimiento que su perfeccionamiento se da por el mero consentimiento y desde ahí las partes están obligadas al cumplimiento de lo expresamente pactado y a todas sus consecuencias, siempre que éstas sean conformes a la buena fe, al uso y a la ley. 31 LPRA sec. 3375.

Un contrato es válido cuando convergen los siguientes tres (3) criterios: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca. 31 LPRA sec. 3391. Cuando un convenio contiene los antepuestos elementos, el mismo es obligatorio y aplicará el principio contractual de *pacta sunt servanda*. Es decir, que el acuerdo constituirá la ley entre las partes. Por consiguiente, los contratos surten efecto solo entre las partes que lo otorgan. 31 LPRA secs. 2994, 3374, 3375 y 3451. Como se sabe, este axioma del derecho contractual "[…] establece la obligatoriedad del contrato según sus términos y las consecuencias necesarias derivadas de la buena fe". *Payano v. Cruz*, 209 DPR 876, 891 (2022); *BPPR v. Sunc. Talavera*, 174 DPR 686, 693 (2008).

En cuanto a la interpretación de los contratos, nuestro ordenamiento jurídico ha establecido que cuando los términos de un convenio son claros y no dejan duda sobre la intención de los contratantes se estará sujeto al sentido literal de sus cláusulas. Mientras que, si las palabras parecieran

---

[11] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

contrarias a la intención evidente de las partes, esta última prevalecerá sobre las palabras. 31 LPRA sec. 3471.

Así, la intención de los contratantes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. Por tal razón, la interpretación contractual se circunscribe en determinar cuál fue la intención real y común de las partes. Para ello, los tribunales han adoptado una metodología pragmática, la cual consiste en estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato. 31 LPRA sec. 3472; *Aut. Puertos PR v. Total Petroleum et al.*, 210 DPR 16 (2022). Esto incluye otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes y el acuerdo que intentaron llevar a cabo. *VDE Corporation v. F&R Contractors,* 180 DPR 21, 34-35 (2010).

**C**

En el presente caso existe entre las partes un contrato de arrendamiento financiero o *lease,* tipificado y regulado por la Ley Núm. 76-1994, conocida como la *Ley para regular los contratos de arrendamiento de bienes muebles*, 10 LPRA sec. 2401 *et seq.* (Ley Núm. 76). Esta ley provee unas salvaguardas a los arrendatarios y unas garantías a los arrendadores, con el fin de estimular la celebración de este tipo de contrato y lograr con ello el crecimiento del sector privado de la economía.

El contrato de arrendamiento financiero ha sido reconocido en nuestra jurisdicción como una nueva forma de financiamiento, siendo este "un contrato atípico, sui generis, producto de la realidad cambiante del tráfico mercantil. *Class Dowing v. Velco*, 143 DPR 186, 198 (1997)*; Meyers Bros v. Gelco*, 114 DPR 116, 120-121 (1983). De manera tal, el contrato de arrendamiento financiero, comúnmente conocido como leasing "es un negocio jurídico cuyo contenido está formado por varias declaraciones de voluntad, las cuales producen una relación jurídica entre las partes suscribientes y establecen los términos que regulan*". Andréu Fuentes y*

*otros v. Popular Leasing*, 184 DPR 540 (2012); *CNA Casualty of P.R. v. Torres Díaz*, 141 DPR 27, 33 (1996).

Así pues, tratándose de una actividad económica de gran interés público, el Estado, como parte de su política pública, aprobó la Ley Núm. 76 para regular el arrendamiento de bienes muebles, salvaguardando la posición del arrendatario y proveyendo unas garantías al arrendador. Es preciso aclarar, además, que anterior a la aprobación de dicha ley, este negocio jurídico se rigió por el principio de autonomía contractual consagrado por el Artículo 1207 de nuestro Código Civil de 1930, 31 LPRA sec. 3372. *Andréu Fuentes y otros v. Popular Leasing*, supra; *Class v. Vehicle Eqmnt. Leasing Co.*, 143 DPR 186, 198 (1997).

Como acuerdo contractual, este tipo de contrato produce obligaciones y derechos particulares para cada una de las partes. Por un lado, el arrendador tiene derecho a exigir al arrendatario el pago del precio estipulado, a inspeccionar la utilización y conservación de la unidad arrendada, a reclamar la indemnización en algunos casos y a resolver el contrato en caso de incumplimiento de las obligaciones por parte del arrendatario. Asimismo, el arrendador tiene la obligación de adquirir la unidad que arrendará del proveer que escoja el arrendatario, informar a ese proveedor de la obligación de entregar la unidad al arrendatario a tiempo y en perfectas condiciones y continuar con el arrendamiento durante el plazo establecido, excepto en los casos en que el arrendatario incurra en incumplimiento. *CNA Casualty of P.R. v. Torres Díaz*, supra, pág. 33.

Por su parte, el arrendatario tiene el derecho a exigir la entrega de la unidad estipulada y a utilizarla conforme a lo acordado en el contrato, a elegir cualquiera de las opciones disponibles al final del contrato o a adquirir la propiedad de la unidad arrendada en cualquier momento durante la vigencia del contrato, siempre que haya sido pactado y que pague anticipadamente la totalidad de los cánones pendientes y el valor residual. De igual forma, el arrendatario queda obligado a pagar los cánones establecidos en el contrato, a utilizar la unidad con el debido cuidado y

diligencia de modo que se garantice su conservación y buen funcionamiento, y a sufragar los gastos de mantenimiento, reparaciones y seguros necesarios y todos los demás gastos y cargas previstas en el contrato. *Íd.,* pág. 34.

Bajo la Ley 76, se considera al arrendador como el titular del bien y al arrendatario como su poseedor, quien podrá usarlo y disfrutarlo, siempre y cuando cumpla con las cláusulas estipuladas en el contrato. Sin embargo, cuando la cosa arrendada cumpla con las cláusulas estipuladas en el contrato. Sin embargo, cuando la cosa arrendada sea un vehículo de motor, se tendrá como titular al arrendatario y esto responde a que se quiso liberar de responsabilidad al arrendador en casos de daños y perjuicios ocasionados por un vehículo de motor sujeto a un contrato de arrendamiento. 10 LPRA sec. 2408.

De otro lado, en lo que aplica directamente al caso de autos, el Artículo 25 de la Ley Núm. 76, 10 LPRA sec. 2423, dispone lo siguiente en casos de incumplimiento:

> (A) En los arrendamientos financieros, el arrendador tendrá la opción de iniciar un procedimiento de reposesión presentado ante el Secretario del Tribunal con competencia en el caso, una declaración escrita y jurada haciendo constar que el arrendamiento no ha cumplido con los términos del contrato de arrendamiento.
>
> (B) Al recibirse la declaración jurada y la copia del contrato de arrendamiento, el Secretario del Tribunal cobrará los derechos establecidos en la Ley Núm. 17 de 11 de marzo de 1915, según enmendada, y citará a las partes interesadas por escrito para una audiencia que tendrá lugar ante el Tribunal competente dentro de los (10) días siguientes a la fecha de citación, para conocer el caso.
>
> (C) En dicha audiencia el Tribunal determinará si el arrendatario no ha cumplido con los términos del arrendamiento, en cuyo caso se dictará una orden, disponiendo que el alguacil incaute del bien arrendado, el cual entregará al arrendador, sujeto a las disposiciones de esta Ley. El aguacil consignará al dorso de la declaración jurada el hecho de la ocupación y de la entrega del referido bien arrendado, describiéndolo detalladamente y entregará al arrendatario una copia de la declaración jurada y del diligenciamiento al dorso de la misma en la cual consignará el lugar, día y hora de la ocupación y remitirá los originales al Secretario del Tribunal. Al recibir el alguacil del Tribunal la declaración jurada antes mencionada, cobrará por los derechos la cantidad dispuesta en la Ley Núm. 17 de 11 de maro de 1915, según enmendada, que cancelará en sellos de

rentas internas, y cuya cantidad incluye los de anotación del asunto en la Secretaría del Tribunal.

El Tribunal, además, dictará sentencia condenando al arrendatario al pago de las partidas que correspondan en virtud de la contratación, y las dispuestas por esta Ley.

Es importante mencionar que, aparte la información requerida en todo contrato de arrendamiento por la Ley Núm. 76, los términos y condiciones del arrendamiento financiero varían *"lease to lease". Andréu Fuentes y otros v. Popular Leasing*, supra, pág. 555; Véase, 10 LPRA sec. 2403. Sin embargo, no debe pasarse por alto que el arrendamiento financiero tiene la finalidad de recuperar la inversión total del arrendador e "impedir que la pérdida de la unidad arrendada se convierta en una perdida financiera para el arrendador". *Íd.*, pág. 556, citando a *CNA Casualty of PR v. Torres Díaz*, supra, pág. 36.

**D**

El Código Civil de Puerto Rico de 1930 es claro en materia de contratos. Dicho cuerpo legal establece que el contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. 31 LPRA sec. 3371. El Código Civil de 1930 dispone que los contratos se perfeccionan por el mero consentimiento y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conforme a la buena fe, al uso y a la ley. 31 LPRA sec. 3375.

Asimismo, la figura de la novación estaba codificada en el Código Civil de 1930, y es una de las maneras en las que se extinguen las obligaciones,[12] aunque puede tener solamente el efecto de modificar la obligación sin extinguirla. Ahora bien, existe la novación *extintiva* y la novación *modificativa*. Referente a estas modalidades, nuestro Alto Foro Judicial, esbozó que:

> La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. De otra parte, se concreta la novación modificativa de una

---

[12] "Las obligaciones se extinguen: Por el pago o cumplimiento; por la pérdida de la cosa debida; Por la condonación de la deuda; Por la confusión de los derechos de acreedor y deudor; Por la compensación; Por la novación". 31 LPRA sec. 3151.

obligación cuando no exista la intención de extinguir una obligación y sustituirla por otra, o cuando medie compatibilidad entre la obligación original y la nueva. *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716, 725 (2008). (Citas omitidas).

Para poder determinar la delimitación entre la novación extintiva y la modificativa, se importante buscar el *animus novandi* o la voluntad de las partes al momento de alterar una obligación. *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 244 (2007). "El *animus novandi* es elemento indispensable de la novación extintiva". *P.D.C.M. Assoc. v. Najul Bez,* supra*, pág. 726. Según el Artículo 1158 del Código Civil de 1930, 31 LPRA sec. 3242, existe una presunción de novar cuando existe total incompatibilidad entre dos obligaciones. Por lo que, al existir una incompatibilidad entre la obligación original y la nueva obligación, produce la extinción de la primera. *Mun. de San Juan v. Prof. Research*, supra*, págs. 244-245.

Por otro lado, la novación modificativa no precisa el *animus novandi* para alterar una obligación. *Íd.* Esta vertiente se configura cuando falta la voluntad expresa de las partes, o cuando existe es una compatibilidad entre las obligaciones pactadas. *P.D.C.M. Assoc. v. Najul Bez*, supra*, pág. 726. Esta vertiente, exige hallar un ánimo de cambio, por lo que es necesario interpretar la voluntad de las partes y las circunstancias de cada caso. *Íd.* Según nuestro Tribunal Supremo, ejemplos de novación modificativa son cuando se confieren prórrogas o plazos fraccionados, o cuando existe un cambio en la duración del término de un contrato. *Íd.*

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

En su único señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al declarar Ha Lugar la solicitud de sentencia sumaria promovida por Oriental Bank. Entre los fundamentos expuestos en su error, arguye que se validó erróneamente la postura de Oriental Bank y se le excluyó de responsabilidad civil, dolo, negligencia inexcusable y la aplicación de otras figuras del derecho civil, particularmente la novación. Asimismo, alega que el foro primario actuó con

total abuso de discreción y prejuicio, lo cual provocó que no se le garantizara una solución rápida de los procedimientos al desestimar su reclamo.

Hemos examinado cuidadosamente el trámite procesal, el expediente ante nos, los escritos de las partes, así como la norma aplicable y concluimos que el Tribunal de Primera Instancia no erró en su determinación. Nos explicamos.

Luego de un análisis sosegado y *de novo* del expediente ante nos, colegimos que Hernández Guilbe incumplió con sus obligaciones de pago por concepto de contrato de arrendamiento financiero suscrito con Oriental Bank y que las obligaciones bajo dicho contrato en ningún momento fueron extinguidas. Asimismo, la fecha de vencimiento del referido contrato estaba claramente establecida en este y, a su vez, las partes aceptaron extenderlo hasta el 22 de marzo de 2016. Además, surge que Hernández Guilbe solicitó que se le concedieran términos adicionales para cumplir con sus obligaciones y, en atención a ello, Oriental Bank le brindó la oportunidad de subsanar varios incumplimientos, además de acceder a la extensión del vencimiento del contrato. De igual forma, es meritorio enfatizar que el contrato de arrendamiento establece expresamente que "[e]ste Arrendamiento no podrá ser alterado, excepto por escrito. El Arrendatario reconoce que no existen representaciones o garantías por parte del Arrendador que no estén aquí contenidas".[13] De lo anterior, se descarta completamente la alegación de que las partes hayan llevado a cabo una novación verbal de su obligación, según propone la parte apelante. En ese sentido, el Tribunal Supremo de Puerto Rico ha enfatizado la importancia del *animus novandi* o la voluntad de las partes al momento de alterar una obligación. *González Román v. Sucesión Cruz Cruz*, 163 DPR 449 (2004); *Warner Lambert Co. v. Tribunal Superior*, 101 DPR 378 (1973). Contrario a lo propuesto por Hernández Guilbe en su oposición a la solicitud de sentencia sumaria de Oriental Bank, dicha voluntad por parte de la

---

[13] Apéndice del recurso, pág. 151.

institución financiera no surge del contrato objeto del presente pleito ni de la prueba documental ante nos.

Según esbozado por las partes, solo habían modificado por escrito los términos del contrato de arrendamiento financiero en julio del 2015. A consecuencia de esto, la extinción o modificación de la obligación de pago de las mensualidades a partir de dicha fecha, así como el residual vencido en marzo de 2016, no se materializó.

Asimismo, el apelante, en ningún momento, controvirtió a través de evidencia fehaciente que lo expuesto por Oriental Bank en la solicitud de sentencia sumaria careciera de mérito. Tampoco se presentó fundamento en derecho que estableciera que Oriental Bank llevó a cabo una novación del contrato de arrendamiento o tuviese alguna obligación de proveerle un refinanciamiento al apelante. Más aun, cuando Oriental Bank accedió a la petición de Hernández Guilbe de extender la fecha de vencimiento del contrato y, aún así, el apelante siguió incumpliendo con su obligación de pago. Conforme a lo resuelto por el Tribunal de Primera Instancia, y según se desprende de la documentación ante nos, la deuda del aquí apelante estaba vencida, líquida y exigible. Por tanto, procedía condenar a Hernandez Guilbe al pago de lo adeudado a favor de Oriental Bank. En vista de ello, no se cometió el error señalado.

En mérito de lo antes expuesto, y como correctamente determinó el foro *a quo*, la revisión *de novo* de la prueba documental ante nos demostró que lo reclamado por el apelante era inmeritorio. En consecuencia, confirmamos la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones