ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| ÁLVARO SANTAELLA JIMÉNEZ, MARÍA SANTE Y OTROS<br><br>Parte Apelada<br><br>v.<br><br>EL RYDER MEMORIAL HOSPITAL, INC., EDUARDO RIVERA SANTIAGO Y OTROS<br><br>Parte Apelante | KLAN202400192 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Civil Núm.: HU2019CV01991<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de julio de 2024.

Comparece el Hospital Ryder Memorial, Inc., el Reverendo Eduardo Rivera Santiago, el Lcdo. José Feliciano Sepúlveda y la Lcda. Carmen Colón Meléndez (apelantes u Hospital Ryder), mediante recurso de *Apelación*, y nos solicitan que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro primario), el 12 de enero de 2024.[1] Mediante el referido dictamen, el TPI declaró ha lugar la *Moción de Sentencia Sumaria Parcial* presentada por el Dr. Álvaro Santaella Jiménez, la Sra. María Santé Pérez y la corporación Grupo Neonatal, CSP (Dr. Santaella o apelados). Por consiguiente, ordenó al Hospital Ryder remunerar el tiempo restante que le quedaba de vigencia al

---

[1] La *Sentencia* fue notificada y archivada en autos el 16 de enero de 2024.

contrato y, además, determinó que procedía el pago de costas y honorarios de abogado.

A su vez, el Hospital Ryder solicita la revocación de la *Resolución* emitida por el TPI el 12 de enero de 2024.[2] En esta, el foro primario declaró no ha lugar la solicitud de sentencia sumaria presentada por los apelantes, por entender que no procede la aplicación de la doctrina *rebus sic stantibus* y que hubo incumplimiento de contrato.

Evaluados los escritos presentados por las partes, así como los documentos que obran en el expediente, resolvemos.

**I.**

El 24 de diciembre de 2019, el Dr. Álvaro Santaella Jiménez, la Sra. María Santé Pérez y la corporación Grupo Neonatal, CSP (apelados o Dr. Santaella) incoaron una Demanda sobre entredicho provisional, injunction preliminar, injunction permanente, incumplimiento contractual y daños y perjuicios, en contra del Hospital Ryder y otros. En la demanda, alegaron que desde el año 1996, comenzaron a ofrecer en el Hospital Ryder servicios en la sala de intensivos neonatales y en la sala de partos. No obstante, en determinado momento advinieron en conocimiento de que el Hospital Ryder había contratado a Pediatrix Medical Group, SP (Pediatrix), para ofrecer los servicios de neonatología y partos. Ante ello, le solicitaron al TPI una orden provisional para que el Hospital Ryder cumpliera con el contrato de exclusividad habido entre ambos y le permitiera al Grupo Neonatal, CSP continuar ofreciendo sus servicios.[3]

En respuesta a ello, el 16 de enero de 2020, el Hospital Ryder presentó su *Contestación a la Demanda.* En síntesis, los apelantes arguyeron que el Dr. Santaella ofreció ciertos servicios en el Hospital

---

[2] La *Resolución* fue archivada y notificada en autos el 16 de enero de 2024.
[3] Apéndice del recurso, págs.1-13.

Ryder. Sin embargo, el paso del huracán María ocasionó daños severos en la infraestructura del Hospital Ryder lo que provocó que el área de neonatología y la sala de parto se volvieran inoperantes, al extremo de que no hubo nacimientos en el hospital por los siguientes dos años. En vista de ello, los apelantes invocaron la doctrina de *rebus sic stantibus* porque el paso del huracán María impidió que el Hospital Ryder pudiera continuar brindando esos servicios y por ende, cumplir con el contrato. Por otro lado, alegaron que el Hospital Ryder ofrecería nuevos servicios, entre ellos, la apertura de una sala de emergencias pediátricas que sería operada por Pedriatrix. Además, puntualizaron que dicho servicio no era realizado por los apelados y, por ende, le solicitaron al TPI la desestimación de la demanda.[4]

Así las cosas, después de haber celebrado una vista, el TPI declaró No Ha Lugar el recurso de *injunction* y convirtió el caso en un pleito ordinario de incumplimiento contractual y daños y perjuicios. Luego de varios trámites procesales, el 15 de junio de 2023, el Dr. Santaella presentó una *Moción de Sentencia Sumaria Parcial,* en la cual propuso 42 hechos que no estaban en controversia.[5] Además, para sostener su postura, anejó copia del contrato de exclusividad, interrogatorios, cartas y publicaciones, entre otros documentos.[6] En esencia, los apelados expusieron que el Hospital Ryder incumplió con las cláusulas del contrato, que el contrato no fue extinguido por el paso del huracán María y que las relaciones contractuales no quedaron interrumpidas porque ambas partes se mantuvieron en negociaciones. Además, que la propuesta

---

[4] Apéndice del recurso, págs. 31-43.
[5] Apéndice del recurso, págs. 151-190.
[6] Apéndice del recurso, págs. 191-276; 1) Contrato de exclusividad; 2) Requerimiento de Admisiones; 3) Carta al Lcdo. Feliciano Rodríguez del 10 de febrero de 2014; 4) Carta al Dr. Álvaro Santaella del 17 de junio de 2014; 5) Interrogatorio y sus contestaciones; 6) Contrato de Premier Nuclear Medicine CSP; 7) Publicación de Facebook; 8) Publicación de Facebook; 9) Publicación del primer nacimiento; 10) Carta del hospital del 18 de enero de 2020; 11) Contrato de Pediatrix; 12) Declaración jurada del Dr. Álvaro Santaella; 13) Declaración jurada del Dr. Adel Vargas.

hecha por el Dr. Santaella hacia el Hospital Ryder no demuestra la inexistencia de una relación contractual.

En reacción, el 10 de julio de 2023, el Hospital Ryder instó su *Réplica a Solicitud de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria a Favor de la Parte Demandada*. En esta, expuso que existían 19 hechos pertinentes en controversia y aceptó 23 hechos que no estaban en controversia según propuestos por el Dr. Santaella.[7] En específico, plantearon que el Hospital Ryder estuvo inoperante luego del paso del huracán María, que Pediatrix no ofrece los mismos servicios que el Grupo Neonatal, que no hubo incumplimiento de contrato por parte del Hospital Ryder y que aplica la doctrina de imposibilidad subjetiva. De igual forma, expusieron que, mediante una carta, le notificaron a los apelados su intención de terminar con el contrato y por ende, no renovar el mismo.[8]

Por su parte, el Hospital Ryder propuso 17 hechos que no estaban en controversia y para sostener sus planteamientos anejó copia de las cartas, deposiciones y publicaciones, entre otros.[9] En resumen, argumentó que no hubo incumplimiento de contrato y que además, los daños ocasionados al Hospital Ryder por el paso del huracán María constituyen una imposibilidad sobrevenida que deja sin efecto el contrato.

Así las cosas, el 31 de julio de 2024, los apelados presentaron una *Oposición a Solicitud de Sentencia Sumaria de Parte Demandada y Reiterando Solicitud de Sentencia Sumaria Parcial de Parte Demandante*, en la cual reiteraron, los mismos argumentos que ya

---

[7] Apéndice del recurso, págs. 291-323.
[8] *Íd.*
[9] Apéndice del recurso págs. 324-566; 1) Contestación Enmendada a Interrogatorio; 2) Carta CMS; 3) Carta RHH-CMS; 4) Carta Depto. Neonatología; 5) Carta sobre deberes al Dr. Adel Vargas; 6) Carta Depto. Pediatría; 7) Carta Renuncia de Pediatría; 8) Deposición Parcial del Dr. Vargas; 9) Deposición Parcial del Dr. Vargas; 10) Corp. Ryder Memorial Hospital, Inc.; 11) Deposición Parcial del Dr. Santaella; 12) Publicaciones; 13) Informe de FEMA.

habían sido presentados.[10] En reacción a ello, el Hospital Ryder presentó una *Dúplica y Solicitud de Remedios*. En esta, le solicitaron al TPI que tomara conocimiento judicial sobre ciertos documentos, reglamentos y leyes, que aportaban a su teoría sobre la inoperatividad del Hospital Ryder.[11]

El 12 de enero de 2024, notificada el 16 de enero de 2024, el foro primario emitió la *Resolución* recurrida. En esta, declaró no ha lugar la solicitud de sentencia sumaria presentada por el Hospital Ryder y expuso los fundamentos de su determinación.

En igual fecha, el TPI dictó la *Sentencia Parcial* apelada, en la que consignó las siguientes determinaciones de hechos:

1) La parte demandante suscribió un contrato de exclusividad llamado "contrato de servicios profesionales exclusivos de neonatología, nursery y asistencia de partos" con la codemandada Ryder Memorial Hospital el 1 de marzo de 2012 con vigencia de dos años.

2) Las partes acordaron que el contrato consistía en prórrogas automáticas por términos de 2 años.

3) El contrato dispone en su clausula 1(a) lo siguiente sobre los servicios contratados: "El doctor ofrecerá todos los servicios de Neonatología para el Hospital, incluyendo, pero sin limitarse a su Sala de Intensivo Neonatal, Nursery y Sala de Partos. Todos los recién nacidos sanos que nazcan en el hospital estarán al servicio del Grupo Neonatal."

4) El contrato dispone en su cláusula 1(g) lo siguiente sobre los servicios contratados: "El doctor ofrecerá estos servicios para el Hospital 24 horas al día, siete días a la semana, los 365 días del año, incluyendo los años bisiestos, garantizando particularmente los servicios de al menos dos Neonatólogos o Pediatras desde las 7:00 a.m. hasta las 3:00 p.m. de lunes a viernes o hasta que dure el programa o "schedule" de cesáreas o partos vaginales para cada día conocido o denominado de día a día como laborable en el Hospital."

5) El contrato dispone en su clausula 1(i) lo siguiente sobre los servicios contratados: "El doctor, además, se compromete a participar y a realizar los programas o actividades educativas que sean necesarios(as) para capacitar a su personal y para mantener el "good standing" o acreditación del Hospital, lo que sea aplicable. El Hospital respaldará estos programas y

---

[10] Apéndice del recurso, págs. 567- 624.
[11] Apéndice del recurso, págs. 704-717.

actividades siempre que los(as) mismos(as) cumplan con las políticas, normas y reglamentos del Hospital, que el doctor conoce."

6) El contrato dispone en su cláusula 7(d) lo siguiente sobre la responsabilidad profesional y manejo de riesgos y seguros: "El doctor cooperará con las actividades de manejo de riesgos del Hospital."

7) Por medio del contrato, se le confirió a la demandante el derecho exclusivo para la práctica de la Neonatología. Según se establece en la cláusula 8 sobre los servicios exclusivos: "En consideración a la necesidad de salud de la comunidad servida por el Hospital, que en todo momento y a las dificultades harto documentadas y diseminadas por los medios de comunicación social en el reclutamiento de profesionales competentes en la rama de la Neonatología y Pediatría, el Hospital le confiere al doctor el derecho de exclusividad para la práctica de la Neonatología en el mismo."

8) El contrato dispone en su cláusula 16(e) lo siguiente sobre su terminación: "En cualquier otra situación, cualquiera de las partes podrá dar por terminado este contrato por cualquier razón o sin ella en cualquier momento mediante notificación escrita por correo certificado a la otra parte, con acuse de recibo, con no menos de sesenta (60) días de notificación previa a la fecha de terminación."

9) El contrato dispone en su cláusula 17(b) lo siguiente sobre la vigencia de cualquier cambio al mismo: "Cualquier cambio a lo aquí pactado tendrá vigencia en la medida en que conste por escrito con fecha cierta y firmada por ambas partes. No hay otro pacto que no sea el que aparece mediante el contrato presente."

10) El contrato dispone en su cláusula 18(a) lo siguiente sobre su renovación: "Tendrá renovación automática, con todas sus cláusulas, por periodos iguales, a menos que una parte le notifique a otra, con por lo menos sesenta (60) días de anticipación a la fecha de renovación, por escrito y con fecha cierta, de su intención de no renovar el contrato o de renegociar sus cláusulas."

11) El huracán categoría 5 se presentó en Puerto Rico el 20 de septiembre de 2017.

12) A causa del huracán el Hospital sufrió daños en los pisos 2, 3, 4 y 5, los cuales quedaron inoperantes.

13) El Hospital abrió las facilidades limitadamente, según se cumplía con las debidas regulaciones del estado, tanto a nivel estatal como a nivel federal.

14) El Hospital le notificó a la demandante la intención de terminar el contrato por escrito el 15 de enero de 2020.

15) En la carta de terminación del contrato que emitió el Hospital el 15 de enero de 2020, no se hace referencia a la intención de no renovar el contrato.

16) El Hospital realizó la reapertura de la sala de partos, unidad neonatal y sala de intensivo neonatal el 17 de marzo de 2020 y ese mismo día ocurrió el primer parto. Este suceso ocurrió exactamente 62 días luego de la emisión de la carta de terminación.

17) El Hospital terminó el contrato con la demandante luego de haberse diligenciado su emplazamiento de la demanda de epígrafe.

18) En la reunión con el Dr. Santaella en el Hospital el 7 de mayo de 2019, se le mostró al Dr. Santaella un monitor que se planificaba utilizar en el área de neonatología una vez abriera la misma y en dicha reunión no se le notificó a este último que el contrato estaba cancelado.

19) La demandante sometió 2 propuestas de contrato en el 2019 cuando aún no estaba en operación el área de la sala de partos, nursery e intensivo neonatal.

20) El contrato inicial no quedó sin efecto en las negociaciones de ajuste de salario entre la demandante y el Hospital, según se lee en la carta con fecha de 17 de junio de 2014.

21) El 25 de noviembre de 2019 el Hospital firmó el contrato con Pediatrix para que brindara servicios de neonatología y acordaron lo siguiente en la cláusula I sobre los derechos exclusivos: "Hospital grants Group the exclusive right to provide Pediatric Hospitalist Services, Pediatric Emergency Room Services, PICU Services (collectively, the ¨Pediatric Services¨) Additionally, Group shall have the exclusive right to provide NICU Services, NBN Services and shall attend all C⁄S and High-Risk Pregnancy Deliveries (collectively, the ¨Neonatology Services¨)."

22) Según el contrato de Pediatrix, además de brindar servicios de pediatría, también consiste en ofrecer servicios de neonatología y acordaron lo siguiente en la cláusula III (b) sobre las obligaciones: "Beginning on the date that the Hospital´s NICU becomes operational, Group shall provide Neonatology Services, as defined in Section I of this Agreement, to Hospital and its patients. Upon this date, coverage of the Pediatric Services and Neonatology Services shall be provided on a twenty-four (24) hour, seven (7) days per week basis by one (1) in house Physician. In addition, Group shall provide one (1) on-call Pediatric Intensivist or Neonatologist to be available as needed."[12]

---

[12] *Íd.*

En virtud de lo anterior, el TPI declaró ha lugar la solicitud de sentencia sumaria presentada por el Dr. Santaella y ordenó al Hospital Ryder a remunerar el tiempo restante del contrato.[13]

Inconforme, el 31 de enero de 2024, el Hospital Ryder, presentó una *Moción de Reconsideración de Resolución (Doc 331) y Sentencia Parcial (332).* En síntesis, los apelantes adujeron que el TPI había errado al imputarle incumplimiento de contrato y a su vez, no aplicar la imposibilidad sobrevenida contemplada en el Código Civil de 1930.[14] El 14 de febrero de 2024, el TPI emitió una *Resolución* en la cual declaró no ha lugar la reconsideración presentada.[15]

Insatisfecho con el dictamen, el Hospital Ryder interpuso el recurso de apelación ante nos, en el que formuló los siguientes señalamientos de error:

> Primer Error: Erró el honorable TPI al dictar sentencia parcial (SUMAC 332) sumariamente adjudicando incumplimiento de contrato aun habiendo controversias sobre hechos medulares en inobservancia de lo que dispone la Regla 36.3 (E) de las Reglas de Procedimiento Civil.
>
> Segundo Error: Erró el honorable TPI al dictar sentencia parcial (SUMAC 332) sumariamente prejuzgando, contrario establece el Artículo 1060 del Código Civil de 1930. 31 LPRA sec. 3024, que procede el pago de una remuneración aun sin haberse escuchado prueba de los alegados daños los cuales no se presumen.
>
> Tercer Error: Erró el honorable TPI al dictar sentencia parcial (SUMAC 332) sumariamente imponiendo el pago de honorarios de abogado sin mediar una determinación de temeridad en contravención a lo dispuesto en la Regla 44.1 (D) de las Reglas de Procedimiento Civil.
>
> Cuarto Error: Erró el honorable TPI al dictar sentencia parcial (SUMAC 332) sumariamente imponiendo el pago de costas aun cuando el caso no ha concluido y, por tanto, no hay una parte victoriosa conforme dispone la Regla 44.1 (A) de las Reglas de Procedimiento Civil.
>
> Quinto Error: Erró el honorable TPI al emitir la Resolución (SUMAC 331) y no identificar correctamente

---

[13] Apéndice del recurso, págs. 1249-1260.
[14] Apéndice del recurso, págs. 1263-1282.
[15] Apéndice del recurso, pág. 1295.

la controversia medular indicando que en "este caso es si el paso del huracán dejó sin efecto el contrato de la demandante o si hay incumplimiento" obviando que lo impredecible, fortuito e inevitable fue la destrucción de las facilidades en el hospital cuyos pisos 2, 3, 4 y 5, [...] quedaron inoperantes y por tanto no aplicar correctamente el derecho en los casos de imposibilidad sobrevenida liberatoria conforme dispone el Artículo 1138, Código Civil de 1930, 31 LPRA § 3193.

Sexto Error: Erró el honorable TPI al dictar Resolución (SUMAC 331) denegando nuestra solicitud de sentencia sumaria aun cuando concluyó en la sentencia parcial (SUMAC 332) que "a causa del huracán [María] el hospital sufrió daños en los pisos 2, 3, 4 y 5, los cuales quedaron inoperantes", asunto que hace manifiesta la imposibilidad de que se pudiera continuar con el cumplimiento de las obligaciones bilaterales asumidas por las partes siendo el tercer piso donde hasta entonces Grupo Neonatal, CSP daba sus servicios.

Séptimo Error: Erró el honorable TPI al dictar Resolución (SUMAC 331) incumpliendo con la rigurosidad de la Regla 36.4 de las Reglas de Procedimiento Civil que exige: "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos". Tal determinación de los hechos fue omitida.

Octavo Error: Erró el honorable TPI al concluir tanto en la sentencia parcial como en la resolución -desacertadamente- que la carta de cancelación del contrato de 15 de enero de 2020 cumplió con la cláusula 16 (E) de cancelación, pero no con la cláusula 18 (A) de no renovación cuando ambas clausulas conducen a la terminación del contrato con independencia una de la otra.

Noveno Error: Erró el honorable TPI al dictar la sentencia parcial y la resolución y no adjudicar correctamente nuestra duplica y solicitud de remedios (SUMAC. 277, 7 de agosto de 2023) en que se solicitó se tomara conocimiento judicial bajo las Reglas de Evidencia, 201-202.

Décimo Error: Erró el honorable TPI al denegar nuestra oportuna solicitud de reconsideración aun cuando nuestro Tribunal Supremo ha establecido que: "el objetivo principal de una moción de reconsideración es dar una oportunidad a la corte que dictó la sentencia o resolución cuya reconsideración se pida, para que pueda enmendar o corregir los errores en que hubiese incurrido al dictarla". Lagares Pérez v. Estado Libre Asociado de P.R., Res. El 23 de diciembre de 1997, 144 DPR__ (1997) citando Dávila v. Collazo, 50 DPR 494, 503 (1936).

(Mayúsculas y negrillas suprimidas).

Así las cosas, el 12 de marzo de 2024 emitimos una *Resolución* para que la parte apelada presentara su correspondiente alegato. En cumplimiento con ello, el 1 de abril de 2024 comparecieron y presentaron su *Alegato en Oposición.* Con el beneficio de la comparecencia de las partes procedemos a resolver.

## II.

### A.

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la sentencia sumaria, cuyo propósito principal es facilitar la solución justa, rápida y económica de casos civiles que no presentan controversias genuinas o reales sobre hechos materiales y esenciales.[16] Además, permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no existe controversia real y que requiera ventilarse en un juicio plenario, por lo cual solo resta aplicar el derecho.[17]

En lo pertinente, procede dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada, si alguna, demuestran la inexistencia de controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho procede hacerlo.[18] De manera que, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[19]

---

[16] *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Rosado Reyes v. Global Healthcare,* 205 DPR 796 (2020); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015).
[17] *Birriel Colón v. Econo y otros,* 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Oriental Bank v. Caballero García,* supra.
[18] Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(e); *González Meléndez v. Mun. San Juan et. al,* 212 DPR 601 (2023); *Rosado Reyes v. Global Healthcare,* supra, págs. 808 y 809.
[19] *Íd.*

El promovente de la sentencia sumaria deberá demostrar que no existe controversia real sustancial de ningún hecho material.[20] Un hecho material es definido como aquel que "puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[21] Se podrá derrotar una moción de sentencia sumaria si existe una "<u>duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes</u>".[22] Énfasis en el original, subrayado nuestro.

Nuestro ordenamiento civil establece unos requisitos de forma con los cuales se debe cumplir al momento de presentar una solicitud de sentencia sumaria. Estos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido.[23]

Toda inferencia que se haga de los hechos incontrovertidos debe efectuarse de la forma más favorable a la parte que se opone a la sentencia sumaria.[24] Nuestro más alto foro ha expresado, que, "[e]l hecho de que la otra parte no presente prueba que controvierta

---

[20] Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a); *Birriel Colón v. Econo y otros*, supra; *Rosado Reyes v. Global Healthcare*, supra, pág. 808.

[21] *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129-130 (2012).

[22] *Íd.* pág. 130; *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713 (2012).

[23] *Oriental Bank v. Caballero García,* supra; Regla 36.3 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3.

[24] *Const. José Carro v. Mun. Dorado*, supra, pág. 130; *Pepsi-Cola v. Mun. Cidra et al.,* supra, a la pág. 756.

la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si verdaderamente existe una controversia sustancial sobre hechos relevantes y pertinentes".[25] Por otro lado, debemos resaltar, que;

> [...]no se dictará sentencia sumaria cuando: (1) existen **hechos materiales y esenciales controvertidos**; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción **una controversia real sobre algún hecho material y esencial**, o (4) como cuestión de derecho no procede."[26] (Énfasis nuestro).

De manera similar, el Tribunal Supremo ha recalcado que "[n]o es aconsejable usar el mecanismo de sentencia sumaria en casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia del alegado discriminen."[27]

Cónsono con lo anterior, nuestro más Alto Foro ha reiterado que, el Tribunal de Apelaciones se encuentra en igual posición que los tribunales de primera instancia al revisar solicitudes de sentencia sumaria.[28] Es por lo que, el Tribunal de Apelaciones "está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario".[29] El Tribunal de Apelaciones no podrá considerar documentos que no fueron presentados ante el TPI, ni adjudicar hechos materiales y esenciales en controversia.[30] Los criterios a seguir por este tribunal apelativo intermedio, al atender la revisión de una sentencia sumaria dictada por el foro primario, han sido

---

[25] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021).
[26] *Pepsi-Cola v. Mun. Cidra et al.,* supra, pág. 757. Citando a *SLG Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133, 167 (2011).
[27] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 980 (2022). Citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994).
[28] *Birriel Colón v. Econo y otros,* supra; *Rosado Reyes v. Global Healthcare,* supra, pág. 809.
[29] *Meléndez González et al. v. M. Cuebas,* supra, pág. 118.
[30] *Íd.* págs. 114 y 115.

enumerados con exactitud por nuestro Tribunal Supremo.[31] A tenor con lo anterior, el Tribunal de Apelaciones debe:

> 1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;
>
> 2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;
>
> 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> 4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[32]

Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa.[33] De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.[34]

**B.**

El Art. 1042 del Código Civil de Puerto Rico de 1930[35], según enmendado, enumera las fuentes de las obligaciones reconocidas por nuestro ordenamiento jurídico.[36] Así, el referido artículo dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que

---

[31] *Roldán Flores v. M. Cuebas et al*, 199 DPR 664, 679 (2018).

[32] *Íd.*

[33] *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

[34] *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 212 DPR 335 (2023).

[35] El Código Civil de Puerto Rico de 1930, fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq*. Para fines de la presente controversia, se hace referencia únicamente al Código Civil derogado por ser la ley vigente al momento que sucedieron los hechos que dieron lugar a la controversia.

[36] 31 LPRA sec. 2992.

intervenga cualquier género de culpa o negligencia".[37] En particular, sobre las obligaciones de naturaleza contractual, el Art. 1206 establece que un "contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio".[38] El principio de la autonomía contractual que rige en nuestra jurisdicción "[p]ermite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes".[39] Esa autonomía estará limitada únicamente, y el contrato será nulo e inexistente, si este último resulta contrario a las leyes, a la moral o al orden público.[40]

Ahora bien, para que un contrato sea fuente de obligaciones es necesario que concurran los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca.[41] De manera que, al concurrir los referidos elementos nace una obligación; desde el punto de vista del acreedor, existe un derecho a exigir su cumplimiento y, desde la perspectiva del deudor, existe el deber de cumplirla.

De otra parte, el Art. 1054 del Código Civil derogado, provee un remedio para daños derivados del incumplimiento de contrato, al disponer: "[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieran al tenor de aquellas".[42] En síntesis, las acciones ex contractu se refieren a actos u omisiones voluntarios que conllevan la inobservancia de obligaciones previamente

---

[37] *Íd.*
[38] 31 LPRA sec. 3371.
[39] *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455-456 (2014); Art. 1207 del Código Civil, 31 LPRA sec. 3372.
[40] 31 LPRA ant. sec. 3372; *Rodríguez Ramos et al. v. ELA et al.*, supra, pág. 456.
[41] Arts. 1213 y 1230 del Código Civil, 31 LPRA secs. 3391 y 3451; *Díaz Ayala et al. v. ELA*, 153 DPR 675, 690-691 (2001).
[42] 31 LPRA sec. 3018.

pactadas.[43] Cónsono con lo anterior, el Art. 1060 del Código Civil derogado[44], dispone que un deudor de buena fe responde de los daños previstos o que se hayan podido prever al momento de constituirse la obligación y que sean consecuencia necesaria de su falta de cumplimiento.[45]

Al igual que en una acción extracontractual, en la *ex contractu* la parte promovente debe probar la existencia de los daños alegados y del incumplimiento culposo o doloso de la obligación contractual.[46] De igual manera, debe existir una relación de causa a efecto entre el incumplimiento y los daños.[47]

Es menester resaltar, que en el ámbito de los contratos, es doctrina fundamental que éstos deben ser interpretados de tal modo que prevalezca la intención de las partes contratantes. En vista de ello, las cláusulas del contrato deben leerse de forma integrada, resolviendo cualquier ambigüedad de modo que todas sus partes surtan efecto.[48] Por lo cual, prevalecen como regla general sobre las tendencias interpretativas que los tribunales han de dar a uno u otro tipo de contrato.[49]

**c.**

A primera vista, nuestro Tribunal Supremo ha reconocido que,

> La obligatoriedad e irrevocabilidad del contrato es de suma importancia para la estabilidad de las negociaciones y las relaciones económicas. Sin embargo, **cuando ocurren circunstancias que alteran la base sobre la cual las partes confiaron al obligarse**, hay justificaciones mayores que surgen de los principios generales del derecho para permitir la modificación o extinción del contrato. (Énfasis nuestro).[50]

---

[43] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 909 (2012).

[44] 31 LPRA sec. 3024.

[45] *Íd.*

[46] *Muñiz-Olivari v. Stiefel Labs.*, 174 DPR 813, 819 (2008).

[47] *Íd.*

[48] Estas normas, emanaban del Código Civil derogado, 31 LPRA secs. 3471 a 3479.

[49] *González v. Sucn. Cruz*, 163 DPR 449, 457-458 (2004); *Caguas Plumbing v. Continental Const., Corp.*, 155 DPR 744, 753 (2001).

[50] *BPPR v. Sucn. Talavera*, 174 DPR 686, 696 (2008).

Ahora bien, la cláusula *rebus sic stantibus* es la fórmula de mayor aceptación entre las variadas teorías sobre la revisión de contratos por alteración de las circunstancias.[51] Conforme al principio de equidad, la cláusula *rebus sic stantibus* atempera la inflexibilidad y severidad del principio contractual de *pact sunt servanda* y le permite al tribunal intervenir en aquellos contratos en los que se laceraría la buena fe o se causaría una injusticia al obligar a su cumplimiento específico.[52]

Según lo resuelto por nuestro Máximo Foro en el caso de *Casera Foods, Inc. v. E.L.A.*, supra, pág. 856, para que proceda la aplicación de la cláusula *rebus sic stantibus*, es necesario que concurran los siguientes requisitos, a saber:

1) La fundamental de la **imprevisibilidad** que implica una cuestión de hecho dependiente de las condiciones que concurran en cada caso.

2) Que se produzca una **dificultad extraordinaria**, una agravación de las condiciones de la prestación, de manera que resulte mucho más onerosa para el deudor, sin llegar al grado extraordinario en que se confundiría con la imposibilidad de la prestación, y que es también una cuestión de hecho sobre la que es difícil dar reglas de carácter general.

3) Que el **riesgo no haya sido el motivo determinante del contrato**, como sucedería en el caso de contrato aleatorio.

4) Que **no exista acción dolosa en ninguna de las partes**, ya que los efectos de los supuestos delitos y cuasi delitos están especialmente predeterminados en la ley.

5) Que **el contrato sea de tracto sucesivo** o esté referido a un momento futuro, de modo que tenga cierta duración, pues para los contratos de ejecución instantánea o aquellos que han sido ya ejecutados no existe el problema.

6) Que la **alteración de las circunstancias sea posterior a la celebración del contrato** (ya que así lo exige la misma naturaleza de acontecimiento imprevisible) **y presente carácter de cierta permanencia** (elemento que viene exigido también por el carácter extraordinario que se exige a la alteración).

---

[51] *Casera Foods, Inc. v. E.L.A.*, 108 DPR 850, 854 (1979).
[52] *Oriental Bank v. Perapi et al.*, 192 DPR 7, 17 (2014). Citando *BPPR v. Sucn. Talavera*, supra, pág. 695.

7) Que exista **petición de parte interesada**.

(Énfasis nuestro).

Una vez concurran los requisitos antes mencionados, el ámbito remedial del tribunal es amplísimo y flexible; por lo tanto, se impone el remedio justo y equitativo, a tono con las circunstancias peculiares del caso, e inclusive sin limitación, la suspensión temporal de los efectos del contrato, su resolución o rescisión, revisión de precios, suspensión o moratoria y otros.[53]

No empecé a lo anterior, el Artículo 1138 del Código Civil de 1930,[54] dispone que: "[t]ambién quedará liberado el deudor en las obligaciones de hacer cuando la prestación resultare legal o **físicamente imposible**". (Énfasis nuestro). Sobre el particular, expone el profesor José Ramón Vélez Torres que la frustración del cumplimiento del contrato por la llamada imposibilidad sobrevenida, codificada en el Art. 1138 Código Civil derogado, *supra*, ocurre cuando;

> Una parte obligada no cumple la obligación principal o recíproca, porque **un hecho inesperado**, fuera de la **voluntad del obligado**, **convierte dicho cumplimiento en uno imposible**. En tal caso, el obligado no cumple por causas que no le son imputables y, como consecuencia de ello, queda liberado.[55] (Énfasis nuestro).

Finalmente, nuestro Tribunal Supremo ha resuelto que en ocasiones un contrato puede ser revisado por los tribunales mediante la aplicación de la cláusula *rebus sic stantibus*, a pesar de que no concurran los siete (7) requisitos mencionados. Nuestro Máximo Foro ha expresado que;

> [c]uando la justicia requiere la intervención de los tribunales conforme a la equidad y la buena fe porque desaparece la base del negocio y falla la causa del contrato, **la posibilidad de moderar el contrato rebasa el campo de lo subjetivo y los tribunales no están limitados por los criterios elaborados**

---

[53] *Casera Foods, Inc. v. E.L.A.*, *supra*, pág. 857.
[54] 31 LPRA sec. 3193.
[55] J.R. Vélez Torres, *Curso de Derecho Civil: Derecho de Obligaciones*, 2da ed., San Juan, Puerto Rico, Programa de Educación Jurídica Continua, Facultad de Derecho, Universidad Interamericana de Puerto Rico, 1997, p. 69.

en ***Casera Foods, Inc. v. E.L.A.***, supra, para la aplicación de la cláusula *rebus sic stantibus*.[56] Énfasis nuestro.

Pese a lo anterior, en todo caso en donde se contemple la aplicación de la norma excepcional, es un requisito *sine qua non* para su procedencia el que la circunstancia que altera el negocio sea realmente imprevisible.[57]

**III.**

A la luz de la normativa antes expuesta, procedemos a evaluar los errores señalados por el Hospital Ryder en el recurso ante nuestra consideración. Como cuestión de umbral, adelantamos que los discutiremos en conjunto por estar estrechamente relacionados a la adjudicación sumaria de las controversias.

Por mandato reglamentario y jurisprudencial, revisamos *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la determinación, entiéndase, los apelantes. De este modo, cotejamos si existen hechos materiales en controversia y si el TPI aplicó correctamente el derecho a la controversia.

Luego de una minuciosa revisión, entendemos que lo que procede es revocar la *Sentencia Parcial* y, en cuanto a la *Resolución*, se confirma únicamente la denegatoria del dictamen sumario solicitado por el Hospital Ryder, no sus fundamentos. Veamos.

Los errores planteados contra los dos dictámenes versan, en apretada síntesis, sobre el alegado incumplimiento del Hospital Ryder con sus obligaciones contractuales y la no aplicación de la doctrina de *rebus sic stantibus*.

En cuanto a la sentencia parcial apelada, colegimos en que la mayoría de las determinaciones de hechos formuladas en el dictamen emitido por el foro de instancia encuentran apoyo en la

---

[56] *BPPR v. Sucn. Talavera*, supra, pág. 715.
[57] *Oriental Bank v. Perapi et al.*, supra, pág. 9.

prueba que obra en el expediente[58]. Por consiguiente, acogemos parte de ellas[59] por referencia y las hacemos formar parte de nuestro dictamen. No obstante, entendemos que existe controversia en las determinaciones número 12 y 15. En la duodécima existe controversia del alcance y los efectos de los daños que dejaron inoperantes los pisos 2, 3, 4 y 5 por causa del huracán. Resulta necesaria la especificidad de cómo dichos daños o inoperancia impidieron el cumplimento de las contraprestaciones entre las partes. Por su parte, en la decimoquinta, entendemos se encuentra en controversia la interpretación e intención de las partes contratantes sobre las cláusulas 16 (E) y la 18 (A) del contrato, en cuanto a las formas de renovación y culminación del contrato. En cuanto a la determinación de hecho número 20, aprovechamos para aclarar que la carta allí mencionada (del 14 de junio de 2014) no menciona o se relaciona a ningún "ajuste de salario", sino a un estipendio para ayudar a subvencionar gastos[60]. Así aclarada, la adoptamos.

De una evaluación de los autos en apelación, entendemos que el TPI erró al determinar en la sentencia parcial apelada, que no existían controversias de hecho sustanciales, que impidieran la resolución del caso vía sumaria.

A continuación, enumeramos los hechos esenciales, materiales y pertinentes que concluimos se encuentran en controversia y que deben dilucidarse en un juicio en su fondo:[61]

1) Determinar si los daños e inoperancia de los pisos 2, 3, 4 y 5 a consecuencia del paso del huracán María, le impidieron al Hospital Ryder y al Dr. Santaella cumplir con sus obligaciones recíprocas.

---

[58] Véase Índice del Apéndice páginas 1251 a la 1253. Sentencia Parcial
[59] Determinaciones de hechos adoptadas: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 16, 17, 18, 19, 21 y 22. Véase Índice del Apéndice de la Apelación, página 1251 a la 1253.
[60] Véase Índice del Apéndice de la Apelación, página 220.
[61] Este análisis se hace a base de los documentos que fueron sometidos junto con la apelación y el alegato en oposición.

2) Determinar si el paso del huracán María interrumpió o suspendió el contrato de exclusividad habido entre las partes.

3) Determinar si desde el 20 de septiembre de 2017 hasta el 17 de marzo de 2020, se realizaron partos en el Hospital y si se atendieron pacientes neonatales.

4) Si ante las circunstancias particulares del presente caso y una vez presentada la prueba en juicio, es de aplicación la doctrina de imposibilidad física sobrevenida o el *rebus sic stantibus.*

5) Determinar si el Grupo Neonatal, CSP y los apelados, podían continuar cumpliendo con sus obligaciones contractuales, luego del huracán María.

6) Si los servicios que ofrece Pediatrix en el Hospital Ryder, son los mismos que realizaban los apelados.

7) La interpretación e intención de las partes sobre las clausulas 16 (E) y la 18 (A) del contrato, en cuanto a las formas de culminación y renovación.

8) Determinar si la renovación automática establecida en la cláusula 18 del contrato de exclusividad opera, aunque el Hospital Ryder haya solicitado la cancelación del mismo mediante una carta.

9) Si el curso de las reuniones y comunicaciones entre las partes demuestra la existencia o no de un contrato. Igualmente determinar si se solicitaron nuevas propuestas al Grupo Neonatal, por conducto del Dr. Álvaro Santaella.

10) Si el Hospital Ryder estaba obligado a notificarle la apertura de las nuevas facilidades al Dr. Santaella.

11) Determinar si la carta de cancelación emitida el 15 de julio de 2020, por el Hospital Ryder, tenía que incluir la intensión de no renovación del contrato.

12) Si la carta de cancelación emitida el 15 de julio de 2020, tenía que incluir una fecha prospectiva para poder dar por terminado el contrato.

Forzosamente los hechos en controversia antes mencionados, requieren un desfile de prueba, donde los elementos subjetivos sean adjudicados con la prueba que se presente. En nuestro caso resulta importante determinar credibilidad, intención y circunstancias fácticas. Entiéndase por esto último, los aspectos físicos y situaciones reales que pudieran o no extinguir las obligaciones recíprocas.

Por otra parte, debemos puntualizar que el TPI incidió al determinar que procede la remuneración por incumplimiento de contrato. Según expuesto en este recurso, existen hechos materiales en controversia y hasta que no sean dilucidados por el TPI, no puede adjudicarse responsabilidad alguna. En particular, existe controversia sobre la aplicabilidad de la imposibilidad sobrevenida o *rebus sic stantibus*. Obsérvese, que la aplicación de la referida doctrina implicaría que el contrato de exclusividad quedó sin efecto ante el aparente estado de inoperancia de ciertas áreas del hospital, por el paso del huracán María.

En cuanto a los errores que cuestionan la *Resolución* que declaró no ha lugar la solicitud de sentencia sumaria del Hospital Ryder, estos carecen de méritos. Reiteramos que ante la existencia de controversias de hecho medulares que impiden la resolución del caso vía sumaria, el TPI actuó acertadamente al declararla no ha lugar. No obstante lo anterior, colegimos que el foro primario incidió en emitir la resolución en incumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*. Tal y como apuntan los apelantes, el foro primario no incluyó en su resolución determinaciones de hecho esenciales, los hechos en controversia o los incontrovertidos. Sin embargo, aunque el TPI haya incumplido con la referida regla – en nuestra encomienda de revisar *de novo* las solicitudes de sentencias sumarias y, ante la existencia de controversias de hecho medulares – concluimos que no incidió al denegar la solicitud de sentencia sumaria presentada por el Hospital Ryder.

Por último, y en lo que respecta a los errores sobre la imposición de costas y honorarios de abogado, el conocimiento judicial y la reconsideración denegada por el TPI, subrayamos que, al este Tribunal resolver que existen controversias de hechos medulares que impiden la adjudicación del caso vía sumaria, dichos señalamientos se vuelven inmeritorios.

Ante lo planteado, entendemos que el TPI tenía el deber de continuar con el juicio calendarizado y no disponer de la controversia por el método sumario, de manera que pudiera evaluar las circunstancias particulares en este caso, pues de las mismas alegaciones de las partes, surgen hechos materiales y esenciales en controversia. En específico, los criterios y requisitos a considerar en cuanto a la doctrina de *rebus sic stantibus*, las cláusulas del contrato de exclusividad y la imposibilidad sobrevenida que libera al deudor. Es parte de la función judicial procurar que se logre un resultado equitativo y justo en una situación que no ha sido prevista en el contrato y ante un planteamiento como el que nos ocupa. Para poder lograr ese resultado, se le debe proveer la oportunidad a las partes de presentar su prueba.

Por lo tanto, concluimos que incidió el foro primario, en el ejercicio de su discreción, al dictar la *Sentencia Parcial.* Aunque la sentencia sumaria es un mecanismo útil para la solución de casos, en el que nos ocupa existen controversias muy particulares y sustanciales en cuanto a los hechos medulares. Por tanto, lo adecuado es proceder con un juicio plenario[62].

**IV.**

Por los fundamentos expuestos y ante los doce (12) hechos materiales en controversia aquí consignados, se **revoca** la *Sentencia Parcial* del 12 de enero de 2024. En cuanto a la *Resolución* del 12 de enero de 2024, expedimos el auto de *certiorari*[63] y ante la existencia de hechos materiales en controversia se **confirma** únicamente la denegatoria del dictamen sumario solicitado por el Hospital Ryder, no sus fundamentos.

Se devuelve el caso al foro primario para que atienda las controversias cónsono con esta determinación.

---

[62] *González v. Multiventas,* 165 DPR 873 (2005)
[63] Regla 40, del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 40

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones